PORTER ET AL VS MURPHY.

Opinion rendered Sept. 26, 1907.

(104 S. W. Rep. 658).

1. *Indian Government—Creation of Office.*

An act of the Council of the Muskogee Nation which empowers the chief of that nation to employ an attorney, having prescribed duties and an annual salary payable from the nation's general funds, does not create an office but the attorney is merely an employe under contract until the tribal relations are dissolved or until some specified date.

2. *Contract of Employment—Breach of Contract—Injunction.*

Complaint alleges that plaintiff was employed as attorney by the chief of the Muskogee Nation according to an act passed by the council of that nation. Without reason plaintiff was discharged and a third person employed as attorney, to whom the chief threatened to pay salary due plaintiff. Plaintiff's only remedy was by way of injunction to prevent payment of money to the third person. Such facts are sufficient to entitle the plaintiff to equitable relief.

3. *Employe's Discharge—Sufficiency of Cause.*

An employer can not cancel employe's contract because outside persons express unfavorable opinion as to character of employe, but only on account of imperfect performance of duty under his contract or because of something foreign which interferes with his duties.

4. *Indian Government—Removal of Officers.*

It being conceded that the Council of the Muskogee Nation passed the act by which the attorney was appointed, he can not be removed without a hearing.

5. *Same—Action for Removal.*

In a suit brought by an attorney employed by the chief of the Muskogee Nation, for wrongful discharge by said chief of attorney, the Muskogee Nation is not necessarily a party.

6.

In a suit brought by an attorney employed by the chief of the Muskogee Nation for wrongful discharge by said chief of attorney the person employed by chief after the discharge, is necessarily a party so far as concerns relief sought to prevent third person from receiving attorney's salary.

Appeal from the United States Court for the Western District of the Indian Territory, before Justice Wm. R. Lawrence; February 10, 1906.

Suit by A. P. Murphy against Pleasant Porter and another. From a decree for plaintiff, defendants appeal. Affirmed.

The complaint in this case is as follows:

"Comes the plaintiff, A. P. Murphy, and complains of the defendants, and for his cause of action states that he is a citizen of the state of Missouri, and resident of the town of Crocker, in the county of Pulaski, in said state of Missouri, and that he is now, and at all the times hereinafter mentioned, an attorney and counselor at law; that P. Porter is a resident of the town of Muskogee, in the Creek Nation, Western District of the Indian Territory, and now and was at all the times hereinafter mentioned the duly elected, qualified, and acting Principal Chief of the Creek Nation or tribe of Indians; that the defendant M. L. Mott is to be found within the Western District of the Indian Territory, and is at present assuming to perform the duties of Creek national attorney, and is pretending that he is authorized so to do by virtue of the contract between the said M. L. Mott and P. Porter, as Principal Chief of the Creek Nation, but whether any such contract has ever been made between the said P. Porter, and the said M. L. Mott, and whether the same, if any such pretended contract has been entered into, is verbal or in writing, and what the terms of said pretended contract are, this plaintiff is unable to state by reason of the fact that he has not any copy of said pretended contract, if the same was in writing, and is unable to procure the same, and was not present at any time when such pretended contract was entered into or assumed to be entered into between the said M. L. Mott and P. Porter. Plaintiff further states that on the 6th day of December, A. D. 1901, the National Council of the Muskogee (Creek) Nation, in regular session at the capitol building in the town of Okmulgee, the capital of the Creek Nation, passed an act entitled, "An act providing for the employment of a national attorney and for other purposes," which

act was on said 6th day of December, A. D. 1901, approved by P. Porter, Principal Chief of the Creek Nation, and also approved by Theodore Roosevelt, President of the United States of America, on the 13th day of December, A. D. 1902, which said act is hereby specially pleaded, and made a part of this complaint, and is set out in full in a contract entered into between the plaintiff herein and said P. Porter, as Principal Chief of the Creek Nation, which is hereafter attached to this complaint as one of the exhibits hereto; that pursuant to the said act of the Creek National Council, above recited, plaintiff herein and the defendant P. Porter, as Principal Chief of the Muskogee (Creek) Nation, on January 10, A. D. 1903, entered into a written contract of employment, whereby the said plaintiff was employed as Creek national attorney until the tribal relations of the Muskogee Nation have been dissolved, and until March 1, 1906, at an annual salary of five thousand ($5,000.00) dollars to be paid quarterly out of the general funds of Muskogee Nation, upon warrants drawn by the defendant P. Porter, as Principal Chief of said Nation, which said contract, was on the 13th day of January, A. D. 1903, by written indorsement thereon, duly approved by W. A. Jones, United States Commissioner of Indian Affairs, and duly approved on the 13th day of January, A. D. 1903, by E. A. Hitchcock, Secretary of the Interior for the United States of America, a copy of which said contract, together with the indorsements thereon, is attached hereto marked, 'Exhibit A,' and made a part of this complaint; that, pursuant to the terms of said contract, the plaintiff herein entered upon his services as Creek national attorney, actually commencing his duties contemplated by the terms of said contract on the 1st day of January, 1903, although said contract as above set out, was not finally approved until January 13' 1903; that from the 1st day of January, 1903, until the 23d day of March, 1904, the plaintiff herein continued in the active and continuous performance of all the duties imposed upon

him by the contract hereinbefore recited, as said Creek national attorney, and fully performed and discharged on his part every stipulation and agreement therein contained, and has continuously since the 1st day of January, 1903, offered and tendered to the said defendant P. Porter, as Principal Chief of the Creek Nation and to said Creek Nation and to citizens thereof, his services as Creek national attorney under said contract, and has at all times been willing and is still willing and hereby offers to perform and discharge all of the duties and obligations imposed upon him by said contract as such national attorney for the Creek Nation.

"Plaintiff further states: That the legislative body of said Muskogee (Creek) Nation consists of a National Council, composed of the House of Kings and House of Warriors, as provided by section one (1) of article one (1) of the statutes of said nation, as follows, to wit: 'Section 1. The law making power of the Nation shall be lodged in a Council, which shall consist of two houses; the House of Kings and the House of Warriors.' That section 65 provides as follows, to wit: 'Sec. 65. The National Council of the Muskogee Nation shall convene within the national capitol at the seat of government on the first Tuesday in October of each year.' That Section 4 of article 2 of the Constitution of the Muskogee Nation provides, as follows, to wit: 'Sec. 4. Whenever any bill or measure shall pass both houses it shall be submitted to the Principal Chief for his approval or rejection.' That section 12 of chapter 1 of the laws of the Muskogee Nation 1893, in relation to the Principal Chief, provides as follows, to wit: 'Sec. 12. He shall have the issuance of all National warrants; but no warrants shall be issued until an appropriation by the National Council has been made to cover same.' That on the 22d day of October, 1903, the Creek National Council, at the capitol building in the town of Okmulgee, the capital of the Creek Nation, duly passed a general appropriation bill for the payment of salaries of officers

of said nation, and being an appropriation for the necessary, incidental, and salary expenses of the Creek Nation, embracing among other appropriations and appropriation out of the general funds of the Creek Nation of five thousand ($5,000.00) dollars for the payment of the salary of the Creek national attorney for the year ending December 5, 1904, which act was duly approved by the defendant P. Porter, as Principal Chief of the Creek Nation, on the ——— day of ———, 1903, which said act is hereby specially pleaded, and a copy of the same is attached to this complaint, marked 'Exhibit B' and made a part hereof. That thereafter the salary of the plaintiff herein, as Creek national attorney, accruing up to the 1st day of April, 1904, was paid by warrants regularly drawn by the defendant P. Porter, as Principal Chief of the Creek Nation, out of said general funds of the Creek Nation, and pursuant to the appropriation bill hereinbefore recited. That on the 23d day of March, 1904, while the plaintiff herein was still performing all of the duties required of him under and by virtue of his contract as national attorney for the Creek Nation, and without any default whatever on his part, and while the plaintiff was still capable of performing and discharging all of the duties and obligations imposed upon him by said contract, and still willing to perform the same, and actually engaged in the due performance of the same, he received in due course of the mail a communication from P. Porter, as Principal Chief of the Muskogee Nation, purporting to be a termination of plaintiff's contract as national attorney for the Creek Nation, which communication was dated March 21, 1904, a copy of which communication is attached hereto, marked 'Exhibit C,' and made a part of this complaint. That on the same day, to wit, on the 23d day of March, 1904, and while the plaintiff herein was still willing to perform all of his duties under his contract as Creek national attorney, and was performing the same as above set out, he received in due course of mail from the defendant P. Porter a

further communication purporting to terminate his said contract as national attorney for the Creek Nation, copy of which second communication is attached hereto, marked 'Exhibit D.' and made a part of this complaint. That immediately upon the receipt of the communications above recited the plaintiff herein served upon the defendant P. Porter, as Principal Chief of the Muskogee (Creek) Nation, a notice to the effect that he did not recognize the authority of said defendant P. Porter to terminate his contract of employment as Creek national attorney in the manner and for the reasons assigned in said communication, and that he was then willing to perform all the services and duties imposed upon and required of him under his contract of employment, dated January 10, 1903, and approved by the Commissioner of Indian Affairs and the Secretary of the Interior, January 13, 1903, and that plaintiff would continue to hold himself in readiness to perform and discharge each, every, and all of the services, duties, and obligations provided for and stipulated in said contract of January 10, 1903, a copy of which notice, together with plaintiff's affidavit of service of same upon the defendant P. Porter, is attached hereto, marked 'Exhibit E' and made a part of this complaint. ' That the plaintiff herein has at all times since the 23d day of March, 1904, been ready and willing to perform and discharge each, every, and all of the services, duties, and obligations provided for and stip- ulated in his said contract of January 10, 1903, and has at all times offered to perform said duties, and is still willing to per- form said duties, and still offers to perform the same and to comply in every respect with his said contract of employment as Creek national attorney, but that the defendant P. Porter, assuming to act as Principal Chief of the Muskogee (Creek) Nation, has unjustly, oppressively, and in violation of the trust conferred upon him by the Creek Nation Council refused to allow the plaintiff to perform any of his duties as Creek national attorney, and that he has notified the United States Indian

Inspector and the United States Commission to the Five Civilized Tribes, the honorable Secretary of the Interior, and the honorable clerk of the United States Court for the Western District of the Indian Territory that he has terminated the contract for the plaintiff as national attorney for the Creek Nation, and the plaintiff is no longer authorized or entitled to perform the services and duties required of him under his contract as Creek national attorney, and said defendant P. Porter, has refused to recognize the plaintiff herein as national attorney for the Creek Nation, and refused to permit plaintiff to continue in the performance of his duties as such, and, in addition thereto, has given to the public press copies of the notices hereinbefore set out, and marked 'Exhibits C' and 'D,' and by reason of the unlawful and unwarranted acts of the said defendant, P. Porter, this plaintiff has been prevented, against his will, and without his consent, and over his protest, from performing and discharging his duties as Creek national attorney, although at all times willing to do so.

"Plaintiff further alleges that he is informed and believes that the defendant P. Porter has entered into some pretended agreement or contract whereby he has, without authority, pretended to employ the defendant M. L. Mott as Creek national attorney, and the said M. L. Mott is pretending that he is authorized by the said defendant P. Porter to act as Creek national attorney, and is assuming to act as such, and is pretending to perform and discharge the duties of Creek national attorney, and the plaintiff further alleges that the defendant P. Porter states and threatens that he will issue to the defendant M. L. Mott warrants drawn upon general fund of the Creek Nation, under the appropriation bill of October 22, 1903, hereinbefore recited, for the payment to said M. L. Mott of the money by said act appropriated to pay the salary of the Creek national attorney, and threatens and states that he will not issue to the plaintiff herein any other or further warrants for

his salary as Creek national attorney, and that he will not pay
to the plaintiff herein his salary as Creek national attorney
arising and accruing under and by virtue of his contract of
January 10, 1903, arising and accruing after April 1, 1904, but
that he will pay all of said salary subsequent to April 1, 1904, to
the said M. L. Mott, and will issue to the said M. L. Mott warrants
drawn upon the general fund of the Creek Nation and signed
by said defendant P. Porter, as Principal Chief of the said Creek
Nation, for said salary for the balance of the year 1904. That
this plaintiff has no remedy at law by which he could sue the
Creek Nation and recover from said Creek Nation the amount
of unpaid salary due him under and by virtue of the contract
of January 10, 1903, or for damages for the breach of said
contract or for the unwarranted acts of said P. Porter in attempt-
ing and pretending to terminate said contract in the manner
and for the reasons assigned in the notice given by him to the
plaintiff, and for the unwarranted and unauthorized and illegal
acts of said P. Porter in preventing this plaintiff from performing
his duties under his contract of January 10, 1903, and notifying all
persons that this plaintiff is no longer recognized as the Creek
national attorney. That the plaintiff has no remedy at law
whereby he can sue the defendant P. Porter personally for the
unpaid balance of the salary arising and accruing to him as
Creek national attorney, under and by virtue of his contract of
January 10, 1903, and no remedy at law whereby he can sue
and recover from the said M. L. Mott any sum of money that
may be received by him from the general funds of the Creek
Nation upon any warrants issued to him in payment of the
salary as Creek national attorney, or issued to him under the
appropriation bill of October 22, 1903, hereinbefore recited, and
that if the defendant P. Porter does issue to the said M. L. Mott
the warrant or warrants for the salary of Creek national attorney
arising and accruing subsequent to April 1, 1904, and the said
M. L. Mott receives the same, this plaintiff will be without any

adequate remedy at law to recover the balance and remainder of his salary as Creek national attorney for the year 1904, and without any remedy at law whatever to recover the same. That under and by virtue of the terms of plaintiff's contract of January 10, 1903, and the act of December 6, 1901, hereinbefore recited, plaintiff's salary as Creek national attorney is payable quarterly, and the defendant P. Porter, as Principal Chief of the Creek Nation, is authorized and directed to issue warrants upon the general funds of the Creek Nation for the payment of said salary quarterly, in the amount of one thousand two hundred and fifty ($1,250.00) dollars each.   As hereinbefore recited, said defendant P. Porter, Principal Chief, has issued to the plaintiff a warrant for his services for the first quarter of the year 1904, and there will be due under said act of December 6, 1901, and the contract of January 10, 1904, the further sum of one thousand two hundred and fifty ($1,250.00) dollars, for which he is entitled to have a warrant drawn by the defendant P. Porter, as Principal Chief of the Creek Nation, upon the general funds of the Creek Nation, but plaintiff alleges that said defendant P. Porter, states and threatens that he will issue said warrant to the defendant M. L. Mott, and that he will not issue to this plaintiff any warrant for said sum or any other sum, and that he will pay or cause to be paid in no manner whatever the salary due this plaintiff as Creek national attorney for the quarter beginning April 1, 1904, and ending June 30, 1904, and that he will not pay or cause to be paid to this plaintiff, at any time hereafter, any amount whatever as salary as Creek national attorney, nor issue any warrant to him for the same; and the plaintiff further alleges that, unless the said P. Porter is restrained by proper order of this court, he will on the 1st day of July, 1904, issue to his codefendant M. L. Mott a warrant drawn on the general fund of the Creek Nation, signed by said defendant, P. Porter, as Principal Chief of the Creek Nation, for the salary which is due this plaintiff as Creek national attorney

for the quarter beginning April 1, 1904, and ending June 30, 1904, and that, unless the court will grant an injunction to prevent said illegal and unwarranted acts so threatened, this plaintiff will be left without any adequate remedy and without any remedy whatever at law for the recovery of the amount due him under his contract of January 10, 1904, for services as Creek national attorney.

"Plaintiff further alleges that at no time since he entered upon his duties as Creek national attorney in January, 1903, has he ever failed in the performance of any of the duties required of him by his said contract, but has faithfully and diligently performed the same; that he has discharged each and every obligation imposed upon him as Creek national attorney, and has never given to either the defendant P. Porter or the Creek Nation or any citizen of the Creek Nation any just cause for his discharge or for the termination of said contract of January 10, 1903, and further avers that no just cause has ever been assigned by the defendant P. Porter or any other person for his discharge as Creek Attorney or for the termination of his said contract of January 10, 1903, and that he has never been discharged nor said contract terminated in manner and form, and in accordance with the terms and conditions therein stipulated and provided, but is still the duly and legally constituted national attorney for the Creek Nation, entitled to perform his duties as such, and to receive the compensation provided for in his contract for the same, and that the interference with him in the performance of his duties as such, against his will and over his protest, and the assumption of the defendant M. L. Mott of the right to perform the duties of national attorney are without warrant of law, and are in violation of the terms of plaintiff's contract of January 10, 1903.

"Premises considered, plaintiff prays:

"First. That the defendant P. Porter be enjoined and restrained from signing or issuing or attempting to sign or issue

any warrant or warrants upon the general fund of the Creek Nation, payable to M. L. Mott or to the order of M. L. Mott, or to any other person or the order of any other person, except the plaintiff herein, for the salary of Creek national attorney for the quarter beginning April 1, 1904, and ending June 30, 1904, or for the salary of Creek national attorney for any other period whatsoever, subsequent to April 1, 1904, and enjoining and restraining the defendant P. Porter from paying or attempting to pay or cause to be paid to M. L. Mott or any other person than the plaintiff herein, any portion of the salary of Creek national attorney, arising and accruing subsequent to the 1st day of April, 1904, and enjoining and restraining the defendant M. L. Mott from receiving or attempting to receive, either directly or indirectly, any warrant for the salary of Creek national attorney arising and accruing subsequent to April 1, 1904, and from receiving any warrant therefor or receiving payment thereof, in any other manner whatsoever, and from collecting, selling, negotiating, or otherwise disposing of any warrant that may have been issued to him for any part of the salary of Creek national attorney, arising and accruing subsequent to April 1, 1904, said injunction and restraining order to be in force against the said P. Porter and the said defendant M. L. Mott and all persons acting by, through, or under them, or under color of any authority from them, until the further order of this court in the premises.

"Second. That upon a final hearing of this cause the plaintiff, A. P. Murphy, be adjudged to be the duly and legally constituted national attorney for the Creek Nation, entitled to perform the duties of such, and entitled to receive pay for the same, and entitled to have issued to him a warrant for all of his salary as Creek national attorney arising and accruing subsequent to April 1, 1904, and that the acts of the defendant P. Porter, in attempting to discharge him as such national attorney, and terminate his contract as such, be decreed to be without warrant

of law, and unauthorized by the contract of January 10, 1903, and of no force and effect whatsoever, and his pretended employment of M. L. Mott, as Creek national attorney declared to be illegal and without any warrant of law, and that it be decreed that said M. L. Mott is not entitled to perform the duties of Creek national attorney, nor to receive the salary of Creek national attorney; that a mandatory injunction be issued by this court, commanding the defendant P. Porter, as Principal Chief of the Creek Nation, to issue to the plaintiff, A. P. Murphy, a warrant for all of his salary as Creek national attorney arising and accruing subsequent to April 1, 1904, up to the date of the decree herein and other warrants for such salary as shall accrue up to and until his contract as such attorney shall have terminated, in accordance with law, and the terms and conditions in said contract provided enjoining and restraining the said defendant P. Porter and the said defendant M. L. Mott from in any wise interfering with the plaintiff in the performance and discharge of his duties as Creek national attorney and receiving his salary as such until his contract of January 10, 1903, as such national attorney, shall have terminated, in accordance with law and the stipulations and provisions of said contract.

"Third. For all such other and further relief as the facts may warrant, and the court shall in equity and good conscience deem proper.

"WILLIAM T. HUTCHINGS,

"PRESTON C. WEST,

"Attys."

To this complaint defendant (appellant) interposed demurrer as follows:

"And now comes the said defendants in person, and by Charles A. Cook and Thomas & Foreman, their attorneys, and defend the wrong and injury, when, etc., and demur to the complaint filed herein, and for causes of demurrer say: (1) The said complaint and the matters and things as therein alleged

and set forth as facts are not sufficient in law to constitute a cause of action. (2) The alleged facts set forth in said complaint show that the plaintiff has complete remedies at law. (3) The matters and things alleged as facts in said complaint are not sufficient in law to give a court of equity jurisdiction or to warrant the granting of an injunction or restraining order. And for other good and sufficient reasons.

"PLEASANT PORTER and MARSHALL L. MOTT,
Defendants."

The cause on demurrer was referred to a master in chancery, who, after hearing extended arguments and considering lengthy briefs on both sides, made the following report:

"Master's Report.

"To the Honorable Charles W. Raymond, Judge of said Court:

"The undersigned, Thomas A. Sanson, master in chancery, for this court, to whom the above-entitled cause was heretofore referred upon the plaintiff's bill of complaint and prayer for an injunction herein, begs leave to make the following report:

"(1) This cause came on for hearing before me at my office, at Muskogee, in this district, on January 16, 1905, the plaintiff. appearing by Preston C. West, Esq., his attorney, and the defendants by Messrs. John R. Thomas and Charles A. Cook, the cause, presented upon the sufficiency of the bill, was argued at length by counsel, and also submitted upon the briefs hereto attached. (2) After hearing the argument of counsel and a careful examination of the briefs filed, I am of the opinion (1) that the plaintiff's bill of complaint states a cause of action, and, if the allegations of the bill are sustained, that he is entitled to the relief prayed. (2) That the plaintiff is without a plain, adequate, and complete remedy at law. I, therefore, recommend that the writ of injunction prayed by the plaintiff be granted, and demurrer to bill of complaint overruled."

Appellants thereupon filed exceptions objecting especially as follows: "First. For that the said master in his said report

hath found that the plaintiff's bill of complaint states a good cause of action.    *    *    *    Seventh.  For that this cause not being at issue, the order of reference to the master herein upon questions at law was unauthorized by law, and the report of the master is wholly inoperative and of no effect, and no order of court can properly be based thereon."

Exceptions were each overruled.  Defendants excepted, and the court made the following order:  "On this 8th day of February, 1905, this cause coming on to be heard on plaintiff's application for a temporary restraining order, and the plaintiff appearing by his attorney Preston C. West, and defendants appearing by their attorneys Chas. A. Cook and Thomas & Foreman, the court, after considering the complaint and hearing the arguments of counsel, doth order that the prayer of plaintiff be granted, as to temporary restraining order, and it is further ordered and decreed that the defendant P. Porter and all persons acting by, through, or under him, be enjoined and restrained from signing or issuing, or attempting to sign or issue, any warrant or warrants upon the general fund of the Creek Nation, payable to M. L. Mott, or to the order of M. L. Mott, or to any other person, or the order of any other person, except the plaintiff herein, for the salary of Creek national attorney, for the quarter beginning April 1, 1904, and ending June 30, 1904, or for the salary of Creek national attorney for any other period whatsoever subsequent to April 1, 1904, and that defendant P. Porter, and all persons acting by, through, or under him or under color of any authority from him, be enjoined and restrained from paying or attempting to pay, or causing to be paid, to M. L. Mott, or any other person than the plaintiff herein, any portion of the salary of Creek national attorney arising and accruing subsequent to the 1st day of April, 1904, and that the defendant M. L. Mott, and all persons acting by, through, or under him, or under color of any authority from him, be enjoined and restrained from receiving or attempting to receive

either directly or indirectly, any warrant for the salary of Creek national attorney arising and accruing subsequent to April 1, 1904, and from receiving any warrant or receiving payment thereof in other manner whatsoever, and from collecting, selling, negotiating, or otherwise disposing of any warrant that may have been issued to him for any part of the salary of Creek national attorney arising and accruing subsequently to April 1, 1904, until the further order of this court upon the plaintiff, Arthur P. Murphy, filing a bond, with good and sufficient sureties in the sum of $2,000, to be approved by the clerk of this court." And on the same day the court overruled defendants' demurrer to the complaint, defendants excepting.

Defendants filed answer, consisting of sundry admissions and denials, which it is unnecessary to set out in detail, further than to say that the denials put in issue the points (1) that the appellant Porter in removing plaintiff "acted unjustly, oppressively," but avers that his actions in that behalf were right and proper and fully within his lawful power and authority as Principal Chief and executive head of the Creek Nation; and that in the performance of said act he was but complying with the order of the honorable Commissioner of Indian Affairs and the honorable Secretary of the Interior, the latter of whom had full supervisory control of said contract and possesses lawful power and authority to approve the action of the defendant Pleasant Porter, as Principal Chief of the Creek Nation, in cancelling said contract and terminating the employment of said plaintiff as national attorney for the Creek Nation. "Defendants deny that the defendant Pleasant Porter, as Principal Chief of the Creek Nation, gave copies of the notice hereinbefore set out and marked 'Exhibits C' and 'D' to the public press for the purpose of injuring or damaging the said plaintiff, but that the same were published in the public press as ordinary official news, and defendants deny that the acts of defendant

Pleasant Porter, as Principal Chief of the Creek Nation, in preventing the plaintiff from performing and discharging his duties as Creek national attorney was a violation of the legal rights of the plaintiff, but aver that the same were proper, legal, official acts warranted by law.     *     *     *     Defendants deny that the plaintiff has no remedy at law.   Defendants deny plaintiff suffered damage by reason of the breach of said contract, or for any acts of the defendant Porter in preventing plaintiff from performing any official duties recited in plaintiff's contract of January 10, 1903, or for notifying any or all persons that plaintiff was no longer recognized as Creek national attorney. Defendants deny that plaintiff has no remedy at law whereby he can sue defendant Pleasant Porter personally for any lawful claim he may have against him, either arising under this contract or by virtue of plaintiff's contract of January 10, 1903, and defendants deny that plaintiff is without remedy whereby he can sue and recover from the defendant Marshall L. Mott any money which may be received by him, the defendant Marshall L. Mott, which may of right legally belong to said plaintiff in his individual capacity or in his pretended] official capacity   as Creek national attorney, whether said amount be represented by cash paid to said defendant Marshall L. Mott, or by warrants on the general fund of the Creek Nation, delivered; to him as payment of the salary of Creek national attorney, by virtue of the appropriation bill of October 22, 1903, set forth in plaintiff's bill of complaint Defendants aver that said plaintiff has under the law full, complete, and adequate remedies at law for any injuries which he may suffer by reason of the official acts of defendant Pleasant Porter, as Principal Chief of the Creek Nation, or for any act of either or both of said defendants in their individual capacities. Defendants admit that under and by virtue of plaintiff's contract of January 10, 1903, and of the act of the Council of the Creek Nation of December 6, 1901, mentioned and set forth in plaintiff's

bill of complaint, the salary of the Creek national attorney is made payable quarterly and that the defendant Pleasant Porter, as Principal Chief of the Creek Nation, is authorized and directed to issue warrants upon the general funds of the Creek Nation for the payment of said salary of Creek national attorney in the amount of $1,250. Defendants admit that, unless the said defendant Pleasant Porter, as Principal Chief of the Creek Nation, has been restrained by the order of this court, he would have on the 1st day of July, 1904, issued to his codefendant, Marshall L. Mott, a warrant drawn upon the general fund of the Creek Nation, signed by him, the defendant Pleasant Porter, as Principal Chief of the Creek Nation for the salary which is due to the defendant Marshall L. Mott as Creek national attorney for the quarter beginning April 1, 1904, and ending June 30, 1904, for which second quarter of said year and for all of the year 1904, he is legally warranted and authorized to do so, unless enjoined by this court from so doing. Defendants deny that the plaintiff has performed all of the duties required of him by said contract, or that he has faithfully and diligently performed the same, and that he has discharged every obligation imposed upon him as Creek national attorney; but aver that said plaintiff has by his unwarranted acts in stirring up strife among citizens of the Creek Nation, by his untrue and libelous utterances against the defendant Pleasant Porter, as an individual and as Principal Chief of the Creek Nation, and by his untrue and libelous utterances against the officials of the United States on duty in the Creek Nation and in the Five Civilized Tribes, and by his assuming authority to do and doing acts which he had no legal authority whatever to do, and by absenting himself from the Creek Nation and devoting time and energy which belonged under his contract to the Creek Nation, in securing the nomination for Congress and making the race therefor, in the state of Missouri, rendered himself not only obnoxious to the defendant Pleasant Porter, as

Principal Chief of the Creek Nation, but has shown his total unfitness for the performance of the duties and obligations imposed by his contract as Creek national attorney, but by. his said acts has furnished complete and sufficient grounds to warrant the cancellation and termination of his contract as Creek national attorney, and the plaintiff's dismissal as said Creek Nation attorney by the defendant Pleasant Porter, as Principal Chief of the Creek Nation, by and with the consent, approval, and authority of the Commissioner of Indian Affairs and of the honorable Secretary of the Interior, and the defendants aver that the cancellation of said contract was right, proper and lawful and fully within the rights of the executive of the Creek Nation, and defendants deny that the plaintiff's said contract of employment as Creek national attorney was canceled through malice, ill will, or on account of any other than good, sufficient, and legal causes growing out of the unwarranted and illegal acts of the plaintiff while acting as such Creek national attorney.    *    *    *    Defendants deny that the right or power of this honorable court to enjoin and restrain the defendant Pleasant Porter, as Principal Chief of the Creek Nation, from signing, or issuing, or attempting to issue; warrant or warrants upon the general fund of the Creek Nation payable to defendant Marshall L. Mott, or to the order of defendant Marshall L. Mott, or to any other person as Creek national attorney, for the second quarter beginning April 1, 1904, and ending June 30, 1904, and defendants deny the jurisdiction, right, or authority of this honorable court to enjoin and restrain the defendant Pleasant Porter, as Principal Chief of the Creek Nation, from paying, or attempting to pay or cause to be paid, to the defendant Marshall L. Mott or to any other person than the plaintiff herein any part of the salary of Creek national attorney arising and accruing subsequent to the 1st day of April, 1904, or of enjoining the defendant Marshall L. Mott from receiving either directly or indirectly, any warrant

for the salary of Creek national attorney arising and accruing subsequent to April 1, 1904, or of enjoining the defendant Marshall L. Mott from receiving, either directly or indirectly, any warrant for the salary of Creek national attorney arising and accruing subsequent to April 1, 1904, or from receiving any warrant therefor or receiving payment thereof in any manner whatever or from collecting, selling, negotiating, or otherwise disposing of any warrant which may have been issued to him for any part of the salary of Creek national attorney arising and accruing subsequent to April 1, 1904, and they deny the right, power or jurisdiction of this honorable court to enjoin or restrain by order or otherwise the defendants from the performance of the duties imposed upon each of said defendants by law and by virtue of the contracts entered into by defendant Pleasant Porter, as Principal Chief of the Creek Nation, and defendant Marshall L. Mott as Creek national attorney. Defendants deny that the lawful right of said plaintiff, Arthur P. Murphy, to be adjudged by this honorable court or any other court to be duly and legally constituted national Creek attorney, or that he is entitled to perform the duties of such office, or that he is entitled to receive pay for any duties he may claim the right to perform, or that he has the right to have issued to him a warrant for his salary as Creek national attorney arising and accruing to him subsequent to April 1, 1904. Defendants deny the right, power, or jurisdiction of this honorable court to adjudge and decree that by discharging him the plaintiff as such Creek national attorney and by terminating his contract as such to be without authority of law, or unauthorized by the contract of January 10, 1903, or that said acts of defendant Pleasant Porter, as Principal Chief of the Creek Nation, or of defendant Marshall L. Mott, are illegal or without warrant of law, but, on the contrary, defendants aver that said defendant Pleasant Porter, as Principal Chief of the Creek Nation, by authority of law and by the power

vested in him as executive head of the Creek Nation, had full and complete lawful authority to cancel and terminate said contract, to dismiss the plaintiff as Creek national attorney, to employ by and with the advice and consent of the Secretary of the Interior Marshall L. Mott, as Creek national attorney, and they further aver that the said Marshall L. Mott, by virtue of his contract with defendant Pleasant Porter, as Principal Chief of the Creek Nation, which said contracts have been duly approved by the honorable Commissioner of Indian Affairs and the honorable Secretary of the Interior, is entitled to receive the salary of Creek national attorney. Defendants deny the right, power, authority, or jurisdiction of this honorable court to interfere with the official acts of defendant Pleasant Porter, as Principal Chief of the Creek Nation, in interfering with the plaintiff and preventing him from performing and discharging or attempting to perform or discharge any duties as Creek national attorney, or from receiving any salary as such Creek national attorney since the date of the cancellation and termination of plaintiff's contract. Defendants deny that the plaintiff is entitled to any relief of whatsoever nature or kind in his bill of complaint or under the law, or that a court of equity has authority, power, or jurisdiction to grant any relief to plaintiff as prayed for in his said bill of complaint."

Cause was referred to master, and during hearing before him plaintiff, appellee, applied for modification of order of injunction, which was resisted by defendants, appellants, and over objection and exceptions of appellants the court made the following order of modification: "On this day, this cause coming on to be heard upon the motion of plaintiff herein for modification of the temporary injunction heretofore granted in this cause, and having heard the matter, and being well and sufficiently advised in the premises, it is ordered that the temporary injunction heretofore granted in this cause be and the same is modified, as follows: The defendant P. Porter

is ordered and directed to issue all warrants for the salary of Creek national attorney accrued to date, and make said warrants payable to plaintiff, A. P. Murphy, and deliver said warrants to R. P. Harrison, clerk of this court, and that the plaintiff, A. P. Murphy, within 10 days after such delivery to the clerk, indorse said warrants to the order of R. P. Harrison, clerk of this court, and it is further ordered that, as to future quarterly payments as salary of Creek national attorney, the defendant P. Porter shall issue warrants payable to plaintiff, A. P. Murphy, for the amount of said quarterly salary, and deliver said warrants to R. P. Harrison, clerk of this court, and that plaintiff, A. P. Murphy, within 10 days after such delivery to the clerk, indorse said warrants to the order of R. P. Harrison, clerk of this court, and that the said R. P. Harrison is ordered and directed to collect all money due upon all warrants delivered and indorsed to him as directed in this order, as soon as practicable after such delivery and indorsement to him, and hold said funds in the registry of this court subject to the final order of the court in this suit."

And parties thereafter filed stipulation controlling disposition of funds as is set out in the judgment. Judgment was had upon the stipulation as follows:

"On this day, this cause coming on to be heard upon a motion for a modification of the order of September 30th, herein modifying the original injunction granted in this cause, and it appearing to the court the plaintiff herein, A. P. Murphy, and the defendant Pleasant Porter had entered into the following stipulation, to wit: 'It is agreed by and between the plaintiff, Arthur P. Murphy, and Pleasant Porter, defendant in the above-entitled cause, that the defendant Pleasant Porter shall issue all warrants for the salary of the Creek national attorney accrued to date, and make said warrants payable to R. P. Harrison, clerk of the United States Court for the Western District of the Indian Territory, and have the same approved

by the United States Indian Agent for the Union Agency, and deliver said warrants to the said R. P. Harrison, as clerk, and defendant Pleasant Porter shall issue all warrants for the future payment of the salary of the Creek national attorney as the same become due and make same payable to R. P. Harrison, clerk, as aforesaid, and have the same approved by the United States Indian Agent for the Union Agency, and deliver the same to said Harrison. It is further agreed that said R. P. Harrison, as clerk, shall collect all money due upon all warrants delivered to him as soon as practicable after such delivery and to hold said funds in the registry of the court, subject to the final order of the court in this cause.' It is therefore ordered that the order made herein September 30, 1904, requiring the defendant P. Porter to issue warrants payable to plaintiff, A. P. Murphy, and deliver the same to the clerk of this court, be modified in accordance with the stipulation above set out to the extent that the said P. Porter may and is hereby authorized to execute all of the warrants for salary now accrued and hereafter to accrue during the pendency of this action, on account of the salary of Creek national attorney, to R. P. Harrison, said warrants to express on their face that they are made on account of payments of salary of Creek national attorney, and that upon his so issuing said warrants and delivering the same R. P. Harrison, clerk of this court, the same shall be deemed a compliance with the order of this court heretofore made as modified by said stipulation and this order."

Evidence was duly taken before the master, who made and filed his report finding generally on the facts and law in avor of plaintiff, appellee, and partially against defendants, appellants. Exceptions to master's report were taken by both parties and argued to the court, and the court overruled all exceptions, allowing exceptions to each party, and made and entered the following judgment and decree:

"Decree.

"On this day comes on the above-entitled cause for final hearing upon the pleadings and evidence in this cause, and the master's report herein, and the exceptions thereto, by plaintiff and defendants heretofore filed and heard, the plaintiff appearing by his attorneys, William T. Hutchings, Esq., and Preston C. West, Esq., and the defendants by their attorneys, Thomas & Foreman; and it appearing to the court that on the 6th day of December, A. D. 1901, the National Council of the Muskogee or Creek Nation of Indians enacted an act 'providing for the employment of a national attorney and for other purposes,' and that the same was approved by the Principal Chief of the Creek Nation, and by the President of the United States, and that by the provisions of said act the Principal Chief of the Creek Nation was authorized to contract with and retain and employ an attorney at law or firm of attorneys at law, whose employment should continue until tribal relations of the Muskogee Nation should be dissolved, and until March 1, 1906, and that the compensation of such attorney for services rendered under provisions of this act should be the sum of $5,000 per annum, to be paid quarterly from the general funds of the Muskogee Nation, and that such contract should be approved by the honorable Secretary of the Interior, and further provided by said act that such contract should be subject to cancellation by either party thereto upon 30 days" notice for good cause shown; that on the 10th day of January, 1903, P. Porter, as Principal Chief of the Muskogee or Creek Nation, in pursuance of said act, made and entered into a contract with the plaintiff, Arthur P. Murphy, by the terms of which he retained and employed the plaintiff, Arthur P. Murphy, as attorney for the Muskogee or Creek Nation of Indians, whose employment should continue until the tribal relations of the Muskogee Nation should be dissolved, and until March 1, 1906, at an annual salary of $5,000, to be paid quarterly, the contract to be approved by the honorable Secretary of the

Interior, and subject to cancellation by either party to the contract, upon 30 days' notice for good cause shown; that said contract was duly approved by the honorable Commissioner of Indian Affairs, and by the honorable Secretary of the Interior January 13th, A. D. 1903; that the plaintiff, Arthur P. Murphy, at the time of the making of said contract with P. Porter, as Principal Chief of the Creek Nation, was an attorney and counselor at law engaged in the active practice of his profession at Crocker, Pulaski county, state of Missouri, and enjoying a lucrative practice; that he abandoned this practice to accept this contract and retainer from the Creek Nation, and came to the Creek Nation, and entered upon the performance of his duties as such attorney, and continued to do and perform all the services required of him by the provisions of said act and the terms of said contract until the 23d day of March, A. D. 1904; that on October 17, 1903, the National Council of the Creek Nation passed an appropriation bill entitled, 'An act providing for pay of general officers of Muskogee Nation,' for the fiscal year ending December 4, 1904, and amongst other things that the sum of $5,000 was appropriated out of the general fund of the nation for the payment of the salary of the national attorney; that the plaintiff, A. P. Murphy, was paid the salary due him as such national attorney up to and including the 31st day of March, 1904, and that there is no dispute between the parties hereto that there is due the plaintiff, and that defendants are willing for plaintiff to be paid his salary from April 1, 1904, up to and including April 23, 1904; that on the 23d day of March, 1904, P. Porter, as Principal Chief of the Creek Nation, notified the plaintiff, A. P. Murphy, that his contract with the Creek Nation was canceled and annulled, and that since said date the defendant P. Porter has refused to permit the plaintiff to do or perform any of the duties required of him by the terms of his contract, although plaintiff has been ready and willing and has offered to do so, and that said action of

the Principal Chief of the Creek Nation the defendant, P. Porter, in attempting to cancel said contract, and the act under which the same was entered into; that on May 10, 1904, the defendant P. Porter, as Principal Chief of the Creek Nation, made and entered into a contract with the defendant M. L. Mott, by the terms of which the defendant M. L. Mott was retained and employed as attorney to represent the Creek Nation for the year 1904, and since the expiration of that contract has entered into a contract with said defendant Mott, by the terms of which the said Mott was retained and employed as attorney for the Creek Nation under an act of the Nation Council of said nation of December 6, 1901, and that both of said contracts were approved by the honorable Commissioner of Indian Affairs, and by the honorable Secretary of the Interior; that in November, A. D. 1904, the plaintiff, A. P. Murphy, was elected a member of Congress for the United States for the Sixteenth District of Missouri, and that his term of office and salary as such member of Congress for the United States began March 4, 1905; that on October 2, 1905, the plaintiff, A. P. Murphy, and the defendant P. Porter, entered into a written stipulation and agreement which has been filed of record in this cause, by the terms of which it was agreed that the defendant Pleasant Porter should issue all warrants for the salary of Creek national attorney accrued to date, and make said warrant payable to R. P. Harrison, clerk of the United States Court for the Western District of the Indian Territory, and have the same approved by the United States Agent, for the Union Agency, and deliver said warrants to the said R. P. Harrison, as clerk, and that defendant Pleasant Porter issue all warrants for the future payment of salary of the Creek national attorney as the same become due and make same payable to R. P. Harrison, clerk, and have same approved by the United States Indian Agent for the Union Agency, and deliver the same to the said R. P. Harrison, clerk, and that the said R. P. Harrison, as such clerk,

should collect all moneys due upon such warrants as soon as practicable, and hold said fund subject to the final order of the court in this cause, and it further appearing to the court that there is now in the hands of the clerk of this court as the proceeds of the warrants delivered to him under the stipulations between plaintiff A. P. Murphy and the defendant P. Porter above recited the sum of $7,195.08, and that of said fund the plaintiff A. P. Murphy is entitled to have and receive from said clerk the sum of $4,320.08, being the amount of salary as Creek national attorney from April 23, 1904, to March 4, 1905, and the defendant M. L. Mott is entitled to have and receive from said clerk the balance and remainder of said fund, to wit, the sum of $2,875; and having heard argument of counsel, and being well and sufficiently advised in the premises, it is by the court considered, adjudged, ordered, and decreed that the exceptions of the plaintiff to the master's report herein, not heretofore withdrawn, by plaintiff, being exceptions Nos. 8 and 9, and the same are hereby overruled, and that exceptions to the master's report herein filed by the defendants in this action be, and the same are hereby, overruled, and that said master's report be, and the same is hereby, in all things approved and confirmed, and that plaintiff A. P. Murphy do have and recover of and from the defendants P. Porter and M. L. Mott, to be paid out of the funds in the hands of the clerk of this court, the sum of $4,320.08 and the clerk of this court is ordered and directed to pay over to the said plaintiff, A. P. Murphy, out of the said funds in his hands the sum of $4,320.08, and that the plaintiff, A. P. Murphy, have and recover of and from the defendants P. Porter and M. L. Mott all of his costs in this action laid out and expended. And it is further ordered and decreed that the master in chancery, Thomas A. Sanson, be and he is hereby allowed a fee of one hundred and fifty ($150.00) dollars for his services as master in this case. To all of which the defendant~ except and pray

an appeal to the United States Court of Appeals for the Indian Territory, which is granted, and bond fixed in the sum of one thousand ($1,000.00) dollars, and 60 days allowed said defendants from date hereof to perfect appeal herein, with stay of execution in the meantime."

Said decree was modified thereafter, filing, changing, and increasing amount of supersedeas bond, and further modified on appellants' motion to permit appellant Mott to receive pay for his services from and after March 4, 1905. The cause stands in this court regularly on appeal.

Appellant makes the following assignment of errors:

"Assignment of Errors: Comes now the said defendants, P. Porter, Principal Chief of the Creek Nation, and M. L. Mott, by Thomas & Foreman, their attorneys, and say that in the foregoing record and proceedings there is manifest error in the action, rulings, and opinions of the United States Court for the Western District of Indian Territory held at Muskogee, in this, to wit: (1) The court erred in overruling defendants' demurrer to plaintiff's complaint, and holding that it had jurisdiction of the subject-matter and of the person of the defendants. (2) The court erred in ordering a temporary injunction (or restraining order) against defendants on the complaint and affidavits filed. (3) The court erred in overruling defendants' demurrer to plaintiff's amended petition and in modifying the order of injunction, and by requiring the defendant P. Porter to pay into court the general fund warrants of the Creek Nation, or money, the property of the Creek Nation; the Creek Nation not being a party to said suit. (4) The court erred in refusing to make the Creek Nation a party to said suit when said suit involved the enforcement of a contract entered into between P. Porter, as Principal Chief of the Creek Nation, for and in behalf of said Creek Nation, and the plaintiff, which affected the property of the Creek Nation. (5) The court erred in entering a judgment and

decree in favor of the plaintiff and against the defendants as individuals, for the alleged violation of a contract between the plaintiff and the Creek Nation. (6) The court erred in entering a judgment and decree against the defendants as individuals for the alleged violation of a contract entered into between P. Porter, as Principal Chief of the Creek Nation (acting in his official capacity as Principal Chief and executive of the Creek Nation), and the plaintiff, when said contract had been vacated and canceled by an executive order of P. Porter, as Principal Chief of the Creek Nation, in conformity with a provision of said contract, and after the cancellation of said contract had been approved by the Secretary of the Interior prior to the commencement of said suit. (7) The court erred in subjecting the property of the Creek Nation to the payment of a judgment and decree in favor of the plaintiff and against the defendants; the Creek Nation not being a party to the suit. (8) The court erred in holding that it had the jurisdiction and power to review, control, and set aside the executive act of P. Porter, as Principal Chief of the Creek Nation, in canceling and vacating the contract between the plaintiff and P. Porter, as the Principal Chief of the Creek Nation. (9) The court erred in holding that it had jurisdiction to entertain, hear, and determine said cause. (10) The court erred in referring to the master in chancery said case upon the question as to whether or not the court had jurisdiction and as to whether or not a temporary injunction (or restraining order) should be granted against the defendants. (11) The court erred in overruling the defendants' exceptions to the report of the master in chancery, filed on the 27th day of December, 1904, finding that said court had jurisdiction of the subject-matter of the suit and of the person of the defendants, and recommending that an injunction (or restraining order) issue against defendants as prayed for in plaintiff's complaint. (12) The court erred in confirming and adopting the report of the master

in chancery filed in said cause on the 23d day of January, 1905. (13) The court erred in overruling defendants' exceptions to the report of the master in chancery filed on the 9th day of October, 1905, and in adopting and confirming said report, and in entering a judgment and decree in conformity with the findings and recommendations of said report. (14) The court erred in assuming the right and jurisdiction of the court to pass upon and set aside the executive act of P. Porter, as the Principal Chief of the Creek Nation, in canceling the contract of employment of the plaintiff as Creek national attorney. (15) The court erred in finding that it had the jurisdiction and right to review and pass upon the executive acts of P. Porter, as Principal Chief of the Creek Nation, in determining the question of 'good cause shown' as a basis for canceling the contract of employment of the plaintiff as Creek national attorney. (16) The court erred in finding and holding that the position of Creek national attorney was not an office. (17) The court erred in holding that the plaintiff did not have a plain and adequate remedy at law. Wherefore, and for divers other errors apparent on the face of the record, appellants pray that said proceedings, as well as the judgment and decree of the United States Court for the Western District of Indian Territory, at Muskogee, be reversed and set aside."

*John R. Thomas, Grant Foreman,* and *Merritt Eslick,* for appellants.

*William T. Hutchings* and *Preston C. West,* for appellee.

GILL, C. J. While appellants assign 17 errors in their brief, in reality appellants group these into 4, and, accepting this grouping, we will proceed to a discussion of the case under these four heads, reducible in fact to one, the first, viz.: (1) Because this is an action to try title to an office. (2) Because plaintiff had a complete and adequate remedy at law. (3) Because the action is one to control the acts of an executive office of the Creek Nation and of the United States. (4) Be-

cause the court did not make the Creek Nation a party to the suit.

　　Counsel for appellants contend that this was an action to try title to an office; that to be under contract to perform the duties of national attorney for the Creek Nation created an office. The act concerning the employment of a national attorney is as follows:

"An Act Providing for the Employment of a National Attorney and for Other Purposes.

　　"Be it enacted by the National Council of the Muskogee Nation:

　　"That the Principal Chief be, and he is hereby, authorized to contract with, retain, and employ an attorney at law, or firm of attorneys at law, whose employment shall continue until the tribal relations of the Muskogee Nation shall be dissolved, and until March 1, 1906, and whose duty it shall be to advise the Principal Chief upon all legal questions arising touching the affairs of the Muskogee Nation, and to represent said Nation before all Courts, and before all committees of Congress, when requested to so appear by the Principal Chief, or by the Honorable Secretary of the Interior, and to advise with any and all Commissions or Committees appointed on behalf of the Muskogee Nation to treat with the Commission to the Five Civilized Tribes.

　　"And it shall be further the duty of the said attorney at law, or firm of attorneys at law, to represent the Muskogee Nation in all matters affecting citizenship in said Muskogee Nation, now pending before the Dawes Commission, or which may at any time be, upon appeal, pending before the Honorable Secretary of the Interior; and under the direction of the Principal Chief, to appear on behalf of all individual citizens of the Muskogee Nation, in any Court, or before the Dawes Commission, or the United States Indian Inspector for the Indian Territory, to protect the rights of such

individual citizens, in accordance with, and under the terms of the Act of Congress entitled 'An Act to Ratify and Confirm an Agreement with the Muskogee or Creek Tribe of Indians, and for other purposes,' approved by the President March 1, 1901, and perform the same duties under any subsequent agreement or Act of Congress.

"It shall further be the duty of said attorney at law, or firm of attorneys at law, to draw all contracts relating to the leasing of lands, and to render services to any individual citizen of the Nation in respect thereto, without additional compensation.

"Said attorney, or firm of attorneys, shall report to the National Council, annually, a statement of necessary expenses, incurred by said attorney, or firm of attorneys.

"Be it further enacted, that the compensation of said attorney at law, or firm of attorneys at law, shall be five thousand dollars ($5,000.00) per annum, to be paid quarterly from the general funds of the Muskogee Nation, and said attorneys at law, or firm of attorneys at law, shall be paid all necessary expenses when absent from the Muskogee Nation, under and in accordance with the terms of the contract with the Principal Chief, said expense accounts to be itemized and duly verified, and rendered quarterly, and shall be approved by the Principal Chief before same shall be paid from the general funds of the Muskogee Nation; provided, that said contract shall be approved by the Honorable Secretary of the Interior and shall be subject to cancellation by either party thereto upon thirty days notice for good cause shown.

"Adopted December 6, 1901."

While this act contemplates a position, it certainly does not create an office; for whether the position is ever filed depends upon the will and pleasure and contract of the Principal Chief, and this contract of employment is authorized to be with a single attorney or with a firm of attorneys. In the same way that the attorney for a railroad or banking corporation, while

holding a most responsible position which is provided for under its bylaws, is not an officer of such railroad or bank, so the attorney provided for in the act of the Creeks is not an officer of the Creek Nation. He is simply a servant under contract to perform certain duties for a certain salary. The case of Hall vs State of Wisconsin, to be found in 103 U. S. 5, 26 L. Ed. 302, is directly in point with the case at bar. This is a case where the Governor was empowered and required to make a written contract with commissioners for certain surveys of the state, providing for the compensation and removal. The court very properly held that the commissioners were not officers, and defined the difference between an officer and a contract, sustaining its decision in the case of U. S. vs Hartwell, 6 Wall. (U. S.) 385, 18 L. Ed. 830, as follows: "An office is a public station or employment conferred by the appointment of government. The term embraces the idea of tenure, duration; emolument, and duties. A government office is different from a government contract. The latter is necessarily limited in its duration and specific in its objects. The terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent of the other." And in this same case the court sustained its decision in the case of U. S. vs Maurice, 2 Brock (U. S.) 96, Fed. Cas. No. 15,747, as follows: "Although an office is an employment, it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to perform a service, without becoming an officer." This is the same rule as laid down in Mechem on Public Officers, § 2. Davis vs Gray, 16 Wall. (U. S.) 203, 21 L. Ed. 447. An examination of the complaint to test whether it is vulnerable to the demurrer shows it was not (1) an action to try the title to an office. In effect, the complaint says that appellee and appellant Porter, as Chief of the Creek Nation, entered into a contract of employment of the former as an attorney to do certain

things, for a certain salary payable, in a certain way, that the money to pay this salary had been provided appellant Porter, as Chief of the Creek Nation, by the Creek Nation for the purpose of paying such salary. (2) That, in violation of its terms, appellant Porter sought to terminate the contract and to discharge appellee without cause, and while he was performing his duties under the contract and ready and willing to continue to do so, and that appellant, after notice to appellee had employed another attorney, the co-appellant Mott, to perform the duties imposed by his contract upon appellee, and, in violation of the rights of appellee, was threatening to and about to pay the funds in his hands which rightfully should be paid to appellee, under his said contract, unto said appellant Mott. (3) That appellee was without adequate remedy to prevent this wrongful diversion of the funds in appellant Porter's control, save by the intervention of the equitable relief by way of injunction preventing appellant Porter from diverting said fund from its use under his contract with appellee to another use under his contract with his co-appellant Mott. In view of the court, the allegations of complaint are sufficient if true to entitle appellee to equitable relief.

The complaint does not seek to determine opposition rights of Murphy or Mott to an office, nor does it seek to determine whether Murphy or Mott should hold an office. It alleges (1) that appellee, under a certain contract, has certain rights to a certain fund in appellant Porter's hands and under his control by the performance of certain acts which it alleges appellee's ability and willingness to do; and (2) that, without fault on the part of appellee, appellant Porter refused to permit appellee to perform his duties under his contract, and was threatening to take such fund and divert same to the payment of Mott, appellant; and (3) that, if appellants were permitted to so act with each other in reference to said fund, appellee would be without redress, and prays an injunction to restrain

such diversion, and for a mandatory injunction commanding appellant Porter to issue to plaintiff, appellee, a warrant for all his salary subsequent to April 1, 1904, and up to date of decree herein and for other relief.

Practically in settling the question of demurrer and holding that the complaint states a cause of action the case is settled, for the court below has determined the facts in favor of appellee. The question of fact whether or not appellant Porter was justified in discharging appellee is worthy our careful review. The contract in question provided that it should be subject to cancellation by either party upon 30 days' notice for good cause shown. The causes for the attempted cancellation of this contract on the part of Porter, appellant, are as follows: "My reasons for this notice of cancellation of the contract of employment are that you have made statements representing the Creek Nation and with reference to the Creek business with the government of the United States which through investigation made by one Bonaparte and Woodruff were found to be without foundation in fact and a part of which report of investigation is as follows: We find with respect to these charges that Mr. Murphy had no special authority from the Creek Nation to file them on its behalf, and that they were filed without the knowledge or consent of the Principal Chief, Pleasant Porter, and, so far as we are informed, without previous consultation with any of the constituted authorities of the Creek Nation. We find further that these written charges were either altogether unfounded or very greatly exaggerated, and, in so far as they had a basis of fact, arose from some friction between Mr. Murphy and Mr. Douglas, for which we cannot undertake to fix the responsibility, etc. We feel that our duty would not be fully discharged if we did not add to what is said of Mr. Murphy in our original report, that he is, in our judgment, so much influenced in his recollection of events and his opinion of individuality by his very strong

sentiments of personal sympathy or antipathy as to render his statements untrustworthy and to impair his usefulness as a public officer." Now, from this quotation, it seems that appellee had filed certain charges without any authority from the Creek Nation and without the knowledge or consent of the Principal Chief, Porter, and thereupon appellant Porter felt authorized to declare the contract of employment of appellee at an end, not with reference to his failure to carry out his contract of employment or his inability to do so, but because certain individuals found that he (appellee) had preferred charges against certain officials. The Creek Nation was not involved in these charges. What the charges were is unknown, and it cannot be said that because Government Inspectors Bonaparte and Woodruff made certain findings in reference to charges preferred by appellee in his individual capacity, and drew certain conclusions as to the effect of appellee's conduct, that the appellant Porter was justified, in any sense, in notifying the United States government officials and the citizens of the Creek Nation and appellee that his contract as Creek national attorney was at an end.

In this connection, the evidence of appellant Porter shows that he went to the Secretary of the Interior about this discharge, after he had read Bonaparte's report, and that the secretary told him that it was a matter of his business and for him to do whatever he thought right, and he says in this connection as follows: "Q. There is a provision in the contract as follows: 'This contract shall be approved by the Honorable Secretary of the Interior and shall be subject to cancellation by either party upon thirty days' notice for good cause shown.' I will get you to state whether or not you canceled the contract? A. I did. Q. Will you give the facts and circumstances in your own way. Just go on and tell us how you came to cancel the contract, and for what reasons? A. I think I set forth in the letter my reasons for it. I set forth in my letter

of notification to Mr. Murphy of his discharge the reason why I did so. Q. Was that all? A. It was all that I canceled it for then. There may have been preceding things that might have had some influence. I canceled it because, after an examination made by the government as to Mr. Murphy's conduct of matters relating to the government and the Creek Nation and myself, that he was thought by this commission to be untrustworthy and unreliable, and I employed him for that very business. Q. What very business? A. To help me conduct the affairs of the Nation, between us and the United States, and to maintain an understanding between each other in this transition period, allotment of land and certain questions which grew out of that, and I wanted a man that was trustworthy and that was honest, and that report seemed conclusive to me that he would not be useful to me any longer. That report was proof to me that he would not serve the purpose for which he was employed and for which the law designed the employment.   *   *   *   Q. From your acquaintance with Mr. Murphy, your experience with him while he was employed as Creek national attorney, from his actions and his conduct, can you tell whether or not the conclusions reached by Mr. Bonaparte were true? A. I took it to be true, and acted on the conclusion that he reached in regard to Mr. Murphy. Q. Was that opinion of yours based upon the report or upon the report and your knowledge of the man and his methods—I mean Mr. Murphy? A. It was principally upon the report, but partly upon my own judgment about Mr. Murphy.   *   *   *   Q. State whether or not, independent of the Bonaparte report, Mr. Murphy's work as Creek Nation attorney was satisfactory to you as Principal Chief or to the Nation? A. Not entirely satisfactory, but I would not have dismissed him. We would have got along. That report was what I did it on. Q. What did you consider the effect of that report to be—what would it result in? A.

It would make everybody think that I was very deficient in judgment, and that he was unbelievable and unreliable as to statement. It went to commend his zeal and to excuse it on that ground but had the effect to discredit him with the people, discredit him with the public. I wanted a man that could be credited and could be relied on. * * * Q. Did the plaintiff in this case comply with those terms (meaning the terms of the contract)? A. Not entirely. Q. State which one of those he did not comply with. A. I don't know as I could go into particulars right here. I would have to look up those things. You complied with them as far as I asked you, and sometimes went beyond my requesting you. * * Q. And the reasons for the dismissal of the plaintiff, are those as contained in these notices? A. Those contained in that letter. Q. The two are just alike? A. Yes, sir. Q. That is the reason for the dismissal? A. Yes, sir; there may have been other things, these little disagreements, that may have influenced me. That would make me feel inclined to do it, but that was the thing upon which I based my act I suppose."

From this evidence and the effect of other evidence on the part of appellant Porter, in the records, the discharge of appellee from his employment under the contract was not on account of failure on the part of appellee to comply with his contract, but because of a report of agents of the government expressing the opinion that the usefulness of appellee as a public officer was impaired. We do not think a report of this kind is a sufficient legal cause for cancellation of a contract of employment. The cause for such cancellation should be for some act of the party himself, either in derogation of his duties under the contract, or because of something outside of the contract but by himself, either in violation of its terms or which in some way affects his performance of the conditions of the contract. To hold that good cause, because persons not connected with the contract and not responsible under it in any way should

express an adverse opinion upon the character of one of the contracting parties is sufficient ground for cancellation of the contract, is in effect to say that it is useless to make a contract, because any one on the outside could just as well express an 'adverse opinion against one of the contracting parties as a government official.

Again, this attempted cancellation of this contract was the act of appellant Porter, and without any opportunity of hearing given to the appellee, and if we were, in this case, to consider the appellants' contention true—that the appointment of appellee as attorney for the nation was in the nature of an office—although afterwards the cancellation of this contract was approved by the honorable Secretary of the Interior, it was not done upon his request after any hearing, nor was it done on the request of the people of the Creek Nation or its representatives after any hearing, but was the voluntary act of appellant Porter as Chief of the Creek Nation    It is held, "where the appointment or election is made for a definite term or during good behavior and the removal is to be for cause it is now clearly established by the great weight of authority that the power of removal cannot, except by clear statutory authority, be exercised without notice for hearing, but that the existence of the cause for which the power is to be exercised must first be determined after notice has been given to the officer of the charges made against him, and he has been given an opportunity to be heard in his defense." Mechem, Public Offices & Officers, § 454, and cases cited; 23 Am. & Eng. Enc. of Law (2d Ed.) 438, and cases cited.    State ex rel. vs Brown, 57 Mo. App. 199; State vs St. Louis, 90 Mo. 19, 1 S. W. 757; Lynch vs Chase, 55 Kan. 367, 40 Pac. 666; Lease vs Freeborn, 52 Kan. 750, 35 Pac. 817; Jacques vs Litle, 51 Kan. 300, 33 Pac. 106, 20 L. R. A. 304; Carter vs Durango, 16 Colo. 534, 27 Pac. 1057, 25 Am. St. Rep. 294; Gillett vs People, 13 Colo. App. 553, 59 Pac. 72; State vs Walbridge, 119 Mo. 383, 24 S.

W. 457, 41 Am. St. Rep. 663; 3 Clark & Marshall, Private Corporations, § 666 and citations. All of these cases apply to a public officer in which nearly all, if not all, the public has an interest, but not dealing with an employe such as is an attorney under contract. The only cause for removal would be a violation of the contract of employment or incompetency, neither of which causes appear to have caused the order of removal in this case. We do not think that there is sufficient legal cause shown for the cancellation of this contract on the part of appellant Porter. So far as we can see, the Nation was not a necessary party to the termination of this suit, nor was appellant Mott a necessary party to this suit further than preventing his receiving that which had been set aside for the purpose of the payment of the appellee u der his contract.

　　The court below had the right, and it was its duty, to make the injunction order and its various modifications, and, under the stipulation filed by the parties, it had the right to make and enter its judgment concerning the disposition of the funds involved in the controversy, and this court, finding no error in the record, affirms the decision of the court below.

　　CLAYTON and TOWNSEND, JJ., concur.