Foyle et al., Appellants, *v.* Commonwealth et al.

Argued December 8, 1930.

Before Trex-
ler, P. J., Keller, Linn, Gawthrop, Cunningham,
Baldrige and Whitmore, JJ.

*J. F. Mahoney,* for appellant.

*Wm. A. Schnader,* Attorney General, and with him *Roscoe R. Koch,* Deputy Attorney General, and *Penrose Hertzler,* Special Deputy Attorney General, for appellee.

*Chas. E. Berger,* for County of Schuylkill.

OPINION BY GAWTHROP, J., January 30, 1931:

These two appeals raise two questions: (1) Whether an assistant county superintendent of schools is an employee of the State of Pennsylvania (Department of Public Instruction) within the meaning of the Workmen's Compensation Laws of the State; (2) Whether an assistant county superintendent of schools of Schuylkill County is an employee of that county within the meaning of our Workmen's Compensation Laws. The appeals were argued together and will be decided in one opinion.

Martin E. Foyle, an assistant county superintendent of schools of Schuylkill County, while in the discharge of his duties as such, sustained accidental injuries resulting in his death. His minor children, through their guardian, filed petitions to be paid compensation by

the State of Pennsylvania and by the County of Schuylkill. The referee found that the deceased was an employee of the County of Schuylkill at the time of his death and made an award of compensation against the county, from which award the county appealed to the Workmen's Compensation Board. The board reversed the referee, holding that the deceased was not an employee of the county. The petition filed against the State of Pennsylvania was dismissed by the referee on the ground that the deceased was not an employee of the Commonwealth and disallowed the claim against the Commonwealth. The board reversed the referee and made an award against the Commonwealth, holding that the deceased was an employee of the Commonwealth. On appeals by the Commonwealth and by the claimants to the common pleas, the award of the board against the Commonwealth was reversed and the appeal of the claimants was dismissed on the ground that the status of the deceased was not that of an employee, but that of a public officer, to whom the provisions of the compensation law do not apply. The claimants bring these appeals.

Was the deceased an employee of either the Commonwealth or the county within the statutory definition of the term "employee?" Section 103 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, provides that "the term 'employer' as used in this act is declared to be synonymous with master and to include natural persons......municipal corporations, the Commonwealth, and all governmental agencies created by it." Section 104 of the same act provides that "the term 'employee' as used in this act is declared to be synonymous with servant, and includes all natural persons who perform services for another for a valuable consideration......" Although, as pointed out by Mr. Justice SIMPSON in McCarl v. Houston Boro., 263 Pa. 1, 4, "we are now dealing with a statu-

tory definition of the terms used, and......cannot import into them a dictionary definition thereof,'' and the statute says that the word ''employee'' as used in the act ·is synonymous with servant, ''and includes all natural persons who perform services for another for a valuable consideration,'' the Supreme Court has consistently held that ''at the time of the passage of the act the words 'master and servant' had a fixed and determined meaning, while the relation of master and servant, and the duties, obligations and responsibilities arising thereunder were clearly defined and established. It was in full view of·this fact that, without attempting any distinction between the term 'employee' and the term 'servant' the act declares that for purposes within its provisions the two terms shall be regarded as synonymous.'' See Smith v. State Workmen's Ins. Fund, 262 Pa. 286, 291, and cases following it. ''No particular definition is given in the act, either of·'master' or 'servant;' so these words must be taken in the ordinary sense in which they are understood in the law, and which the purpose and general content of the act indictates they were intended to have...... These terms master and servant have a very broad meaning and likewise a very restricted one, both in the field of law and of fact, and in each instance where they are used in a statute, it becomes necessary to ascertain from the act itself what meaning must be given to them'': Carville v. Bornot & Co., 288 Pa. 104. Liability under the act depends entirely upon the relationship of employer and employee: Sgattone v. Mulholland and Gotwals, Inc., 290 Pa. 341, 345; Pershing v. Citizens Traction Co., 230 Pa. 235. Since the passage of the statute the Supreme Court has continued to recognize the familiar distinction between an independent contractor and an employee, in deciding that its terms ''employee'' and ''servant'' do not cover an independent contractor.

See Smith v. State Workmen's Ins. Fund, supra; McCarthy v. Dunlevy-Franklin Co., 277 Pa. 467; Kelley v. Del. Lacka. & W. R. R. Co., 270 Pa. 426; Flaherty v. Trout, 290 Pa. 315. The mere fact that a person performs "services for another for a valuable consideration" does not make him an employee within the meaning of the act.

In Carville v. Bornot & Co., supra, it was held that the term "master" was not intended to cover a corporation paying a substantial salary to an executive officer, or the terms "employee" and "servant," one occupying the position of vice-president of the defendant corporation at a salary of $7,000 per annum, or the terms "employee" and "servant," one occupying the position which claimant did. The ground for the decision was that it was not the case of an ordinary employee, on wages, being used pro forma as an executive officer of the defendant company, nor the case of one with a title of an executive officer, but really serving as an ordinary employee and receiving compensation for his work as such. In stating the reasons why the claimant's husband could not be considered an employee, the recently retiring chief justice, speaking for the court, said: "The Workmen's Compensation Act shows throughout that it was passed for the benefit of the great army of business and industrial wage earners and not to benefit salaried executive officers of corporations, and the undefined words used in the statute must be taken in their 'popular sense,' if such sense is 'not contradictory to the object and intention of the lawmakers.' "

To us it seems clear that the act was not passed for the benefit of those who are in fact and in law public officers as distinguished from employees.

There is a well recognized and definite distinction between an office and an employment, although it is not always easy to determine whether a person is an

employee or an officer. The general rule is that a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other hand, is a position which lacks one or more of these elements: 22 R. C. L. Sec. 12, p. 381. In Re Op. of Judges, 3 Me. 481, it is stated: "There is a manifest difference between an office and an employment under the government. We apprehend that the term 'office' implies a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office; and the exercise of such power within legal limits constitutes the correct discharge of the duties of such office. The power thus delegated and possessed may be a portion belonging sometimes to one of the three great departments, and sometimes to another; still it is a legal power, which may be rightfully exercised, and, in its effects, it will bind the rights of others, and be subject to revision and correction only according to the standing laws of the state. An employment, merely, has none of these distinguishing features." See also cases cited in 20 C. J., p. 1244, note 72 (b). The most important characteristic which distinguishes an office from an employment or contract, is that the creation and conferring of an office involve a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public. Unless the powers conferred are of this nature, the individual is not a public officer: State v. Jennings, 57 Ohio St. 415, 424; 49 N. E. 404.

The question whether the holder of a public position is to be regarded as a public officer "must be determined by a consideration of the nature of the service to be performed by the incumbent and of the duties

imposed upon him, and whenever it appears that those duties are of a grave and important character, involving in the proper performance of them some of the functions of government, the officer charged with them is clearly to be regarded as a public one...... It is no doubt true that there are many persons engaged in the public service in subordinate positions exercising functions of such an inferior character that they could not be properly considered public officers within the meaning of the constitution; this much is indicated in Com. v. Black, 201 Pa. 433, and Houseman v. Com., 100 Pa. 222, in the latter of which the court expressed the opinion that policemen, firemen, watchmen and superintendents of public property under the orders of the municipal department were subordinate ministerial agents or employees, at the most, petty officers...... subject to appointment and removal according to legislative regulation. Where, however, the officer exercises important public duties and has delegated to him some of the functions of government and his office is for a fixed term, and the powers, duties and emoluments become vested in a successor when the office becomes vacant; such an official may properly be called a public officer. The powers and duties attached to the position manifest its character'': Ritchie v. Phila., 225 Pa. 511. See also Dewey v. Luzerne Co., 74 Pa. Superior Ct. 300; Com. ex rel. v. Moore, 71 Pa. Superior Ct. 365; Lehman v. Northumberland Co. Com., 87 Pa. Superior Ct. 340.

A consideration of the authority and duties of an assistant county superintendent of schools, and the manner of his selection leaves no doubt in our minds that he is to be considered a public officer. Pursuant to the mandate of the Constitution, Art. X, Sec. 1, that the General Assembly shall provide for the maintenance and support of a thorough and efficient system of public schools and appropriate annually at least

one million dollars for that purpose, the legislature re-established the public school system of the Commonwealth by the Act of May 18, 1911, P. L. 309, known as the School Code. Section 1101 of the Code provides that for the superintendence and supervision of the public schools of the Commonwealth, there shall be elected or appointed, in the manner provided, county superintendents and assistant county superintendents. Section 1 of the Act of May 23, 1923, P. L. 349, amending Section 1105 of the Act of 1911, supra, provides that the school directors of each county in which a county superintendent is to be elected shall meet in convention at a time and place fixed by the act and by a majority vote of those present, elect one duly qualified person as county superintendent to serve for a term of four years. His election is then certified by the president and secretary of the convention, as well as the salary fixed, to the Superintendent of Public Instruction (Act of 1911, supra, Section 1110) who issues a commission to him. His duties are personally to visit all schools under his supervision, to note the courses and methods of instruction and the branches taught, to give such instructions in the art and methods of teaching as he deems it expedient and necessary, and to report inefficiences to the proper school board, to inspect school grounds and school buildings and to report statutory violations to the proper school board.

Section 1126 of the Code, as amended by Section 1 of the Act of May 24, 1921, P. L. 1078, stipulates the number of assistant county superintendents the county superintendent may have, and authorizes the school directors of the county, at their convention for electing a county superintendent, to appoint "additional assistant superintendents to those herein provided." The method of selecting an assistant county superintendent is provided in Section 1127 of the Code as

follows: "The superintendent of each county entitled to an assistant superintendent or assistant superintendents shall, within fifteen days after receiving his commission, nominate to the five officers of the School Directors' Association of the county the assistant superintendent or superintendents, who must furnish the president of said association the same evidence of eligibility as is required for county superintendents. These nominations shall be appointments until the end of the county superintendent's term of office, when confirmed by a majority vote of the five officers of the directors' association of said county. The president and secretary of the School Directors' Association shall certify to the Superintendent of Public Instruction the names and post office addresses of the assistant county superintendents thus appointed, and their salaries as fixed by the directors' convention, and such assistant county superintendents shall be commissioned by the Superintendent of Public Instruction in the same manner and under the same conditions as in the case of county superintendents. Should the county superintendent and the officers of the School Directors' Association of any county fail to nominate and confirm the assistant superintendent or superintendents for such county within thirty days after the county superintendent has received his commission, the Superintendent of Public Instruction shall appoint such assistant superintendent or superintendents to serve until the end of the county superintendent's term of office."

In the event of a vacancy the county superintendent and the officers of the school Directors' Association fill the vacancy (Section 1128) in like manner in which the original selection was made. The said superintendent may remove the assistant county superintendent upon the written charges and recommendations of the county superintendent, or of a majority of the

members of each of three boards of school directors whose schools are under the jurisdiction of the county superintendent, and then only after a hearing and for the same causes and in like manner as a county superintendent is removed (Section 1119). The minimum salary of an assistant county superintendent is fixed at $3,000 per annum by the Act of May 7, 1929, P. L. 1587, amending Section 1130 of the Code. It is paid by the Commonwealth from appropriations made for the public schools. In addition to salary each assistant county superintendent is entitled to receive annually the sum not to exceed $500 for the payment of expenses incurred by him in visiting schools within his district, in attending educational meetings, and in the performance ''of such other official duties as may be required by (of) him by law.'' These payments are made by requisition of the Superintendent of Public Instruction upon the Auditor General. See Section 2 of the Act of May 27, 1919, P. L. 300.

It is the duty of an assistant county superintendent to attend the annual convention of the School Directors' Association and render such assistance and aid to the executive committee of such association as may be required of him (Section 807); to visit the schools assigned him by the county superintendent, to supervise and direct the work of the schools. When so directed by the county superintendent the Superintendent of Public Instruction or a state inspector of High Schools, he is required to direct and conduct examinations for promotion or graduation. He is required to inspect school property and see that the requirements of the law as to buildings, grounds and sanitary arrangements are fully observed and complied with (Section 1131).

Section 1146 of the Code provides that every person elected or appointed as an assistant county superintendent shall, before entering upon the duties of his

office subscribe to and take the same oath or affirmation as persons elected to the office of school director, which oath or affirmation must be filed in the office of the Superintendent of Public Instruction.

From the statutory provisions above recited, it seems clear that an assistant county superintendent is not an employee of the Commonwealth or of the County of Schuylkill within the meaning of the word "employee" as used in the Workmen's Compensation Act. As we said in Lehman v. Northumberland County Commissioners, supra, the Workmen's Compensation Act clearly indicates that it was the legislative intention that the relation of employer and employee, within the meaning of that statute, should arise only where there was a contract, either expressed or implied, of hiring. The status of an assistant county superintendent of schools does not result from a contract of hiring between him and the Commonwealth, or between him and the county, as that phrase is commonly understood. His office is created by the legislature, his minimum salary is fixed by law, he takes and subscribes to an oath, receives a commission, and cannot be removed in any method other than that provided by statute. His duties are prescribed by statute and involve judgment, intelligence, discretion and technical knowledge, and are of such consequence to the public as to place him in a position of such dignity and responsibility that he must be considered a public officer as distinguished from an employee. It follows that the provisions of the Workmen's Compensation Act do not apply to him. This is all that is necessary to decide.

The judgments of the court below are affirmed.