## Commonwealth, ex rel., v. Bush et al.

*Robert M. Laird*, county solicitor, for relator.
*Walter W. Van Baman*, for respondents.

SHERWOOD, J., October 22, 1934.—This is a proceeding for writ of mandamus wherein the Commonwealth of Pennsylvania, ex rel. Walter I. Anderson, District Attorney of York County, is plaintiff, and Benjamin Bush, Harry Ness, Ross Miller, F. D. Benedict and Fred King, Commissioners of Spring Garden Township, York County, Pa., are defendants. The petition was filed by C. R. Ness, a qualified elector of said Spring Garden Township.

The case was argued before the court in banc. At the argument, counsel for the respective parties orally stipulated as follows: It is agreed that the petition for referendum filed with the Commissioners of Spring Garden Township is sufficient as to form; was filed in the proper manner with the proper corporate authorities; was filed more than 60 days prior to the general election to be held on November 6, 1934, and was signed by 123 qualified electors of the Township of Spring Garden; that C. R. Ness, who filed the petition, is a qualified elector and resident of said township and has an interest in the matter at issue; that the number of electors who signed the petition calling for a referendum is not equal to at least 10 percent of the total number of votes cast for all candidates or nominees for certain given offices in the said township at the last preceding general election, but is equal to at least 10 percent of the highest vote cast for any individual candidate in said township at said general election.

The sole issue raised in this proceeding is: Did the legislature, by the phrase "ten per centum of the highest vote cast for any office in the municipality or township", intend to require a number of signers equal to at least 10 percent of the highest total vote cast for all candidates for a given post or office? The issue involved calls for an interpretation of the first paragraph of section 502 of the Liquor Control Act of November 29, 1933, P. L. 15, which is as follows: "Petition for electors for local option.—Whenever electors equal to at least ten per centum of the highest vote cast for any office in the municipality or township at the last preceding general election shall petition the corporate authorities of the municipality or township for a referendum on the question of granting such licenses, the respective corporate authorities shall cause a question to be submitted at the general or municipal election occurring at least sixty days

thereafter, by certifying a resolution, duly adopted, to the county commissioners for submission of such question, on the ballot or on voting machines, at such election in the manner provided by the election laws of the Commonwealth."

The word "office" has often been defined. In 46 C. J. 921 it is said: "The term 'office' is one which is employed to convey various meanings, although it has been said that when used in any proper sense it implies a duty or duties to be performed"; in Commonwealth v. Gamble, 62 Pa. 343, 349, the term "office" is defined to consist " 'in a right and correspondent duty to execute a public or private trust, and to take the emoluments.' " In Foyle et al. v. Commonwealth et al., 101 Pa. Superior Ct. 412, 417, and in Kosek v. Wilkes-Barre Township School District, 110 Pa. Superior Ct. 295, 299, the court quoting In re Opinion of Judges, 3 Me. 481, said: "We apprehend that the term 'office' implies a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office; and the exercise of such power within legal limits constitutes the correct discharge of the duties of such office." In the Oxford Dictionary, among the definitions given for the word "office," we find that the term may be used in a personified sense as denoting an office holder.

Section 3 of the Act of November 29, 1933, P. L. 15, provides as to its interpretation: "This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

The defendants would read into the statute the word "total", and interpret the statute to mean that signers are required in number equal to 10 percent of all the votes cast for all candidates for a certain office in the said township at the last general election. They contend that the word "office" is not used in the personified sense, but is used to mean a designated public post. The legislature must be assumed to understand the meaning of words. Had it been its intention to combine all votes cast for a given office, the legislature would have inserted the word "total" or "entire." If the legislature so intended, it should have used definite language as in other similar statutes. Failure on the part of the legislature to include or use such language as would definitely require the totaling of all votes is some evidence that the legislature did not intend to require such totaling.

In the instant case, the meaning of the word "office" would seem to be doubtful and ambiguous. However, the meaning of a word used in a statute must be construed in connection with the words with which it is associated, and here we must give consideration to the complete phrase "ten per centum of the highest vote cast for any office in the municipality or township". The scope and purpose of the act being for the protection of the public welfare, health, peace, and morals of the people of the Commonwealth, and to prohibit forever the open saloon, the right of the electorate to determine the granting or nongranting of licenses should be liberally construed. Liberal construction does not mean an enlargement or restriction of any plain provision of law, but where a statutory provision is ambiguous or doubtful or susceptible of different constructions or interpretations, then such liberality of construction may be indulged in as, within the fair interpretation of its language, will effect its apparent object. Considering the definitions of the word "office" and the duty imposed upon the court liberally to construe the act to carry out its purpose, we feel that the

word "office", as used in the phrase, indicates the person by whom the duties of the office are to be performed. From the admitted fact that the number of electors who signed the petition for a referendum is equal to at least 10 percent of the highest vote cast for any individual candidate in said township at said general election, it follows that a writ of peremptory mandamus should issue returnable forthwith, due to the exigencies of the case.

And now, to wit, October 22, 1934, it is ordered and decreed that a writ of peremptory mandamus issue, directed to Benjamin Bush, Harry Ness, Ross Miller, F. D. Benedict and Fred King, Commissioners of Spring Garden Township, York County, Pa., commanding them, the said Benjamin Bush, Harry Ness, Ross Miller, F. D. Benedict and Fred King, commissioners as aforesaid, to provide for a referendum in said Spring Garden Township, on the question of granting licenses by the Pennsylvania Liquor Control Board to hotels, restaurants, and clubs within the limits of said municipality for the sale of liquor for consumption upon the premises of such hotels, restaurants, and clubs, and commanding the commissioners as aforesaid to certify a resolution, duly adopted, to the County Commissioners of York County, Pa., for submission of such question on the ballot at the general election to be held on November 6, 1934.