# Rieger v. The Pennsylvania Co., etc., et al.

*William A. Gray* and *Witkin & Egan,* for escheator.

*Claude T. Reno,* Attorney General, and *Ralph B. Umsted,* for Commonwealth.

GORDON, JR., P. J., March 2, 1940.—This is a proceeding in escheat, and the case is before us on a rule by the Attorney General to dismiss the proceedings. On December 12, 1938, plaintiff was duly appointed and commissioned by the then Secretary of Revenue to act as escheator of certain allegedly escheatable funds in the hands of defendant bank. Pursuant to this authority, and in compliance with the General Escheat Act of May 2, 1889, P. L. 66, and its amendments, these proceedings were instituted by appropriate petition on December 23, 1938, on which a citation was issued and served on defendant, requiring it to show cause why the property in question should not be adjudged escheated to the Commonwealth. On February 15, 1939, defendant secured a rule, with stay of proceedings, to show cause why the petition for escheat should not be dismissed. The questions involved in that rule are not now before us, and the reasons for

the apparent delay in bringing it up for decision are not disclosed in this rule of the Attorney General. On June 11, 1939, the present Secretary of Revenue assumed office, and on July 27, 1939, issued a writing under his hand and seal, by which he attempted to revoke plaintiff's commission as escheator, which his predecessor in office had granted more than six months before, and under which plaintiff is here acting. No further action was taken until September 18, 1939, when the Attorney General entered his appearance in the case, and ruled plaintiff to show cause why the proceedings should not be dismissed without prejudice. This rule is based on the contention that, plaintiff's authority to act as escheator having been revoked by the Secretary of Revenue, he has no right to proceed further in the matter, and that he, the Attorney General, representing the Commonwealth as the only remaining party plaintiff in the case, has the right, on his official responsibility and at his pleasure, to move for the dismissal of the proceedings. The document revoking plaintiff's commission assigns no reason for the secretary's action, nor does the rule to dismiss the proceedings allege any misconduct, unfitness, or disqualification of plaintiff to act as escheator, or attempt to justify an action by public officials, which, unexplained, would appear to be an abandonment of property allegedly belonging to the Commonwealth, by terminating proceedings for its recovery regularly authorized and already begun.

Two questions are presented for our determination by the foregoing facts: First, whether the Secretary of Revenue can lawfully and at his pleasure revoke plaintiff's commission as escheator; and, second, if not, whether his action is justified in the circumstances disclosed.

The answer to the first of these questions depends upon the fundamental nature and the legal status of an escheator. The Attorney General contends that the revocation of plaintiff's commission was valid and effective

because, on the one hand, an escheatorship is an office within the meaning of article VI, sec. 4, of the Pennsylvania Constitution, which makes appointed officers removable at the pleasure of the power by which they shall have been appointed, and on the other hand, that even if such a commission does not create an office within the meaning of that article of the Constitution, the secretary's power to remove plaintiff exists under the general principle of law that, in the absence of legislative restriction on the power, the right to employ carries with it the right to discharge at pleasure. Clearly, an escheator is not an officer within the meaning of the Constitution. His status lacks all the essential characteristics of an office; he exercises no governmental function, and his employment is without definite tenure or duration. The indicia of an office are well recognized, and have been repeatedly defined by judicial authority. "The term embraces the idea of tenure, duration; emolument, and duties. A Government office is different from a Government contract. The latter is necessarily limited in its duration and specific in its objects": Porter et al. v. Murphy, 7 Ind. T. 395, 426, 104 S. W. 658; United States v. Schlierhole, 137 Fed. 616; Tanner v. Edwards, Auditor, 31 Utah 80, 86 Pac. 765.

The decisions in this jurisdiction are to the same effect. The distinction between an office and an employment is thus stated in Kosek v. Wilkes-Barre Township School Dist., 110 Pa. Superior Court, 295, 298. " ' "There is a well recognized and definite distinction between an office and an employment, although it is not always easy to determine whether a person is an employee or an officer. The general rule is that a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other hand, is a position which lacks

one or more of these elements"'". See also Foyle et al.
v. Commonwealth et al., 101 Pa. Superior Ct. 412.

An escheator not being an officer, the revocation of
plaintiff's commission by the Secretary of Revenue can-
not be justified under the constitutional provision in-
voked by the Attorney General. We come then to con-
sider whether an escheator is an employe removable at
will by the employing power. While it is true that his
duties arise out of an employment in the broad sense of
the word, it does not necessarily follow that he is an
employe of the Government. The word "employe" has
a more definite and restricted meaning than "employ-
ment," and denotes a legal relationship essentially an-
alogous to that of master and servant. The position of
an employe does not rise to the dignity of an office, or
necessarily involve the performance of governmental
functions. Although not transient and occasional, it
is generally characterized, to some extent at least, by
continuity of tenure and an existence independent of
its incumbent. An employe is not, therefore, an agent
for a restricted or temporary purpose, who acts inde-
pendently, though under the authority and representa-
tive of his principal, and who receives remuneration for
his services on a basis similar to that of an independent
contractor. We think, therefore, that an escheator is
in a different category from that of an ordinary em-
ploye of Government, who, in the absence of legal re-
strictions would be removable at the pleasure of the officer
employing him.

In Miles v. Metzger et al., 316 Pa. 211, in which the
relation between the Commonwealth and its informers
and escheators was under consideration, Mr. Justice
Drew, speaking for the Supreme Court, said (p. 215):

"So far as informers are concerned, the statute pro-
vides a definite reward for those who shall first inform
the Commonwealth that an escheat has occurred, pro-
cure necessary evidence to substantiate the fact of
escheat, and prosecute its right to a successful result.

This is not a gratuity, but an offer, stating the terms upon which the Commonwealth will enter into a contract to pay a fixed sum to anyone who will undertake to perform certain specific services for the state. Miles, by informing the Commonwealth in the manner prescribed by statute, accepted the offer contained in the statute, and a binding contract arose, which the Commonwealth was bound to give him a reasonable opportunity to perform. As was said by the learned Judge McPherson in Com. v Gregg, 1 Dauphin Co. Rep. 203, '(The informer's fee) is a sum offered . . . as pay for a definite service, and the state is liable on the footing of a contract when the offer is accepted and the service is performed . . .". In the same opinion it was held with respect to the escheator Kelker that (p. 216) :

"The situation with regard to Kelker, the escheator, is the same. He was appointed, under the statute, to perform certain definite and prescribed duties with relation to this one estate; he was employed for a special and single object, at a compensation fixed by statute. When he accepted the appointment by the secretary of revenue, a contract was created, whereby he agreed to render certain services to the Commonwealth, in return for a stipulated compensation."

The foregoing analysis of the status of an escheator clearly takes him out of the class of officers and employes, and reveals him as occupying a position in relation to the Commonwealth which is essentially that of an agency coupled with an interest, or of an independent contractor employed to perform a definite and limited service in return for which he is compensated on a contractual basis, which is fixed and determined by law. This being plaintiff's status, his rights are to be resolved by the principles governing contractual relationships, and the Commonwealth's right to revoke without lawful excuse a contract into which it has entered with an individual is no greater than that of any other party to such an instrument. The Supreme Court, discussing

the reciprocal rights and duties of the parties in Miles v
Metzger et al., supra, said (p. 216) :

"After entering into these contracts with the plaintiffs,
the Commonwealth permitted them to perform their
duties without objection for almost two and a half years.
. . . It was not until after the plaintiffs had performed
practically all the services required of them, and the
auditor was about to award the funds to Kelker as
escheator, that the Commonwealth revoked the latter's
commission and proceeded to secure the money, without
the payment of any fees, under section 1314 of the
Fiscal Code. Only this action by the Commonwealth
prevented plaintiffs, who stood ready and willing to com-
plete their performance, from finishing the services re-
quired by the statute. Under these circumstances, it
would be manifestly unfair to permit the Commonwealth
to avoid payment of the fees prescribed by the statute
as compensation for the services which plaintiffs had
rendered. It is well settled, as a principle of funda-
mental justice, that where one party to a contract is
himself the cause of a failure of performance by the
other party, he cannot take advantage of his own breach
of the contract in so doing, to prevent a recovery by the
other party: Bank of Pa. v. Gries, 35 Pa. 423; Kress.
House Moving Co. v. George Hoog Co., 263 Pa. 191;
Horewitz v. Franklin Foundry Co., 279 Pa. 177; see.
Restatement, Contracts, section 295; Williston, Con-
tracts, section 677."

The contractual character of the status of an informer·
or escheator is further illustrated and emphasized in
the later case of Edelman v. Boardman, Secy., etc., 332·
Pa. 85. In it the Secretary of Revenue had revoked an
escheator's commission ten days after its issuance and
before any action had been taken under it, and the
lower court issued a mandamus at the suit of the in-
former to compel the secretary to appoint escheators or
to prosecute the escheats—through the Attorney Gen-
eral. The Supreme Court reversed the action of the·

lower court in a learned and closely-reasoned opinion by Mr. Justice Stern, in which it was held that, inasmuch as an informer is entitled to his fees only out of the escheated property, and as it rests in the discretion of the secretary whether to begin escheat proceedings after an information has been presented to him, mandamus will not lie to compel him to do so. In discussing the informer's status in that case, Justice Stern said (p. 90) :

"It is unnecessary to decide . . . whether, because of inadequacy of the informations, plaintiff is barred from making a claim against the Commonwealth, because even assuming—for present purposes—that the informations were sufficient and that plaintiff thereby acquired substantive contractual rights which the State has violated, we are of opinion that plaintiff cannot be awarded a mandamus against the Secretary of Revenue to compel the institution of proceedings in escheat.

"If, in a contract between two private individuals, one agrees, for a consideration received from the other, to pay the latter a certain percentage of the proceeds to be recovered from a suit to be brought by the promisor against a third person on an existing cause of action, and the promisor breaches the contract by failing or refusing to institute the suit, the promisee ordinarily cannot enforce specific performance by compelling the promisor to sue, but will be relegated to such relief as an action for damages will afford. Likewise, if a promisor, for a consideration, contracts to pay his promisee a designated share of the proceeds to be obtained from the sale of a property which the promisor has agreed to make to a third person, and the promisor refuses to proceed, the promisee cannot compel the promisor to complete the sale, but can only bring an action to recover, as damages, the amount he would have received had the transaction been carried out by the promisor in accordance with his agreement."

It is contended by the proponent of the present rule that the conclusion to be drawn from these decisions is that the

law recognizes, as an incident of the contractual relation, a right to break one's contract and relegate the other party to it to his action for damages for the breach; and hence that the attempt of the Secretary of Revenue to cause the Commonwealth to breach its contract with plaintiff, by revoking his commission, was lawful and left the latter without any remedy for the threatened injury, except a dubious opportunity to apply to the legislature for leave to sue the Commonwealth. While the law recognizes the fact that contracts are at times broken, and provides a remedy for the wrong in the form of damages for the injury done thereby, it does not sanction contract breaking or look upon it as the exercise of a right created by contract. Nor do we understand Edelman v. Boardman, Secy., etc., supra, to be an authority for so bizarre a doctrine. It was certainly not necessary to a decision of the right of plaintiff in that case to a mandamus to compel the institution of proceedings, and it may be seriously doubted that the language used by the learned justice in that case was intended to even suggest the conclusion advanced by the Attorney General.

While contracts can be, and are, daily breached, it has never been held that one has an indefeasible legal right to break his solemn undertaking. On the contrary, injunctions are constantly being issued by our courts restraining threatened breaches of contracts, and in some instances even compelling the performance of acts promised and wrongfully withheld. There is a clear distinction between the power of a court to compel the performance of a contract and its power to interdict its breach, by restraining a threatened act in violation of it. And it is in this respect that the present case is distinguishable from the cases relied on by the Attorney General. Plaintiff here is not seeking, as in Edelman v. Boardman, Secy., etc., the performance of an act contracted for and which we have no power to compel the secretary to perform. That had already been done by his predecessor in office; the Commonwealth's election to collect the money by

escheat has been made; plaintiff has been commissioned to proceed; and on the faith of the contractual rights thus acquired has for more than six months been performing his part of the agreement. In this situation the Commonwealth's officials are apparently attempting, without excuse or justification, to prevent him from securing the fruits of his bargain by completing the performance of his contract. It is an allegedly unwarranted intrusion into plaintiff's suit which is opposed, and which we are asked to prevent by discharging the rule; and we know of no legal or equitable principle which requires us to permit the Commonwealth to break its contract to the damage of plaintiff. This was held by Judge Penrose in Kelly's Estate, 8 Dist. R. 635, which is the only case called to our attention which appears to rule directly the question before us.

The conclusion to be drawn from the foregoing authorities is that the Secretary of Revenue has no absolute and unqualified right to revoke an escheator's commission after it has been issued. In so holding, however, we do not mean to indicate that a right to revoke such a commission can never exist, for he may undoubtedly do so in some circumstances, as, for instance, if the escheator refuses to function under his commission. This leads to an inquiry into the character and extent of the right to revoke and the circumstances in which it may be lawfully exercised.

Passing over for the moment the technical procedural considerations complicating the Miles v. Metzger and Edelman v. Boardman cases already discussed, it may be said that the right would generally exist whenever the circumstances would justify a rescission of the contract. If, for example, the contract had been entered into under a mutual mistake of fact or of law, as intimated in the opinion of Mr. Justice Stern in Edelman v. Boardman, Secy., etc., or if the escheator is wrongfully or improperly performing his duties to the damage of the Commonwealth's interests. Ingenuity might suggest numer-

ous circumstances in which it would become, not only the right, but the duty of the Secretary of Revenue to interfere and remove an escheator, and especially where the cause for such action arises soon after the issuance of the commission, and before anything has been done by the escheator under it. The commission is only the evidence of the escheator's authority, and an attempt to revoke it, which is not made until after substantially all of the services contracted for have been performed (as was the situation in Miles v. Metzger et al., supra, and Kelly's Estate, supra), would be clearly unlawful and beyond the power of the secretary. No precise rule can be advanced to meet the many and different situations that could develop in cases of this character. Each case must be determined upon its own facts as it arises, and by the application of fundamental principles of equity and fair dealing. We can only inquire here into the validity of the revocation of this plaintiff's commission and the attempt to terminate the present proceedings.

As previously noted, the escheat proceedings have already been begun, a substantial part of the services required of plaintiff have been performed, and he stands ready to render the balance. Why, therefore, is it sought to remove him, and to forego the advantage of the progress already made in the collection of the escheated property? This we think is a proper and pertinent inquiry, if we are to permit him to be denied the right to complete his contract. The petition for the rule is silent upon this subject, and is grounded solely upon a bald assertion of the revocation of plaintiff's commission. It is true that the petition does ask that the proceedings be dismissed "without prejudice", but what is meant by the use of this phrase is not even suggested. Does it mean without prejudice to commission another escheator, and begin another proceeding in escheat; or to collect the property in another manner without the employment of an escheator; or to abandon the Commonwealth's property to those who allegedly have no right to it? Had there existed

any other substantial reason for removing plaintiff as escheator, it should, and we assume would, have been disclosed either in the petition, or in the order attempting to revoke the commission. That any of the foregoing suggested reasons was the real reason for the action of the secretary is not to be believed. So far as the petition discloses, it was without apparent, or at least disclosed, justification, and hence amounted to a legal abuse of his power and discretion. The attempt, in such circumstances, to revoke plaintiff's commission was, therefore, unlawful and abortive.

Accordingly, the rule of the Attorney General is discharged.